[Civ. No. 4971. Fourth Dist. Mar. 23, 1956.]

MARTHA G. WELLS, as Special Administratrix, etc., Respondent, v. COCA COLA BOTTLING COMPANY OF FRESNO (a Corporation), Appellant.

Ray W. Hays and James N. Hays for Appellant.

William M. Thornton for Respondent.

BARNARD, P. J.—This is an action for damages for personal injuries to the original plaintiff alleged to have been caused by drinking a bottle of Coca Cola containing pieces of glass. The Coca Cola Bottling Company of Fresno and the owners of a grocery store where the bottle of Coca Cola was purchased were named as defendants in the action.

The action was tried before Judge Moran sitting without a jury on March 4, 1953. After both sides had rested the judge suggested he would like to have briefs filed. Both sides agreed and the judge said "Very well. It will be ordered that the case be submitted on briefs, 15, 15, 5." The preceding discussion indicates that the parties understood that the plaintiff was to file the first brief. No briefs were ever filed and on December 4, 1953, the court signed a memorandum indicating its decision against the Coca Cola Bottling Company, but in favor of its codefendants, and ordering the plaintiff to prepare findings of fact and conclusions of law.

The plaintiff's counsel presented proposed findings of fact and conclusions of law to the court on February 24, 1954. The plaintiff died on February 28, 1954. The findings of fact and conclusions of law were signed by the court and filed on

March 2, 1954. A judgment awarding the plaintiff $3,000 as against the Coca Cola Company was signed and filed on March 8, 1954. Thereafter, plaintiff's counsel learned that the plaintiff had died in Arizona on February 28. Judge Moran was retired for disability on March 26, 1954.

The Coca Cola Company filed a motion to set aside the judgment, and a notice of intention to move for a new trial; the plaintiff's wife, as administratrix, was substituted as plaintiff in the action; and plaintiff's counsel filed notice of a motion for an order amending the findings and judgment by changing the date thereof to February 26, 1954, and for an order that they be filed *nunc pro tunc* as of February 26. All of these motions were heard by Judge Meyers who entered a minute order on August 26, 1954, denying the motion to set aside the judgment, denying the motion for a new trial, and ordering that the findings of fact, conclusions of law, and judgment be amended by changing the date thereof to February 26, 1954, and that they all be filed *nunc pro tunc* as of February 26. Later, a formal order to the same effect was signed and filed and the Coca Cola Bottling Company has appealed from the judgment thus entered.

It is first contended that the court had no power or jurisdiction to enter any judgment prior to the death of the original plaintiff because the case had not yet been submitted. It is argued that the case had been ordered submitted on briefs, that no order was later made submitting the case without briefs, and that the plaintiff had not waived his right to file the opening brief. While it is admitted that in a case tried before the court counsel has no absolute right to argument, and that whether argument should be allowed is a matter within the discretion of the court, it is argued that the court had here deferred submission and ordered that the cause be argued in briefs, that prejudice appears since the evidence was conflicting and the appellant had a right to point out the conflicts to the court, and that by rendering its decision without allowing the appellant to exercise that right the court exceeded its jurisdiction and committed prejudicial error.

In *Franks* v. *Cesena*, 192 Cal. 1 [218 P. 437], where a similar order was made submitting the case on briefs, the court held that the submission of the case was not deferred until the filing of the final brief, and that the plaintiff could not dismiss the action because the matter had been submitted. Whether or not the instant case should be deemed to have been submitted at the close of the trial, when time was allowed

for briefs, it can hardly be questioned that the court had the power to take it under submission and decide it when no briefs were filed over a period of many months. Assuming that in the exercise of that power the court should have then entered a formal order of submission, before indicating its decision and ordering the preparation of findings, and that the failure to do so was error, any such error should not be held reversible under the facts here appearing. (Const. art. VI, § 4½.) The appellant had an ample opportunity to comment on the conflicts in the evidence, in the absence of an opening brief if this was thought necessary, and could have filed a brief had it so desired. The conflicts in the evidence were obvious to anyone, including the court, and were such that the decision of the case would necessarily rest upon which of two sets of witnesses were believed. After such a long delay the judge was justified in believing that the parties had waived the privilege of filing briefs, and in considering the case as submitted. Under the circumstances, the act of deciding the case, taken in connection with the original order and the delay, was a sufficient submission of the case and no reversible error appears in this connection.

It is next contended that even if the court had jurisdiction to decide the case prior to the death of the original plaintiff "it had no right or power to enter the *nunc pro tunc* findings and judgment." It is argued that this was done by a judge other than the one who had heard the case; that a *nunc pro tunc* judgment may be entered only when a case is ready for the rendition of final judgment, and when the delay in entering the judgment is the result of some act or delay of the court and is not due to any fault of the party making the application; and that the delay in entering judgment here was due to no fault on the part of the court, but resulted solely from the respondent's failure to file any brief, and the failure to submit findings of fact and conclusions of law promptly after the court's decision on December 4, 1953.

In *Fox* v. *Hale & Norcross Silver Min. Co.*, 108 Cal. 478 [41 P. 328], it was pointed out that the authority of a court to order the *nunc pro tunc* entry of a judgment is inherent in the court and is to be exercised for the purpose of doing justice between the parties; that if the cause has been tried and finally submitted the rights of the parties are to be determined as they existed at the time of such submission; and that the decision which the parties have invoked the court

to make is not necessarily the statutory and technical decision, but is the final determination of the rights of the parties. While it was pointed out that a court will always exercise this authority when it is apparent that the delay in entering judgment is that of the court and is not owing to any fault of the party making the application, it is further stated that "a *nunc pro tunc* order should be granted or refused as justice may require in view of the circumstances of the particular case." Similar principles are pointed out in *Norton* v. *City of Pomona*, 5 Cal.2d 54 [53 P.2d 952]. In *Leavitt* v. *Gibson*, 3 Cal.2d 90 [43 P.2d 1091], the court approved the general test, ". . . was the cause in such condition at the date to which the judgment is to relate back that a final judgment could then have been entered?" In *Estate of Pillsbury*, 175 Cal. 454 [166 P. 11, 3 A.L.R. 1396], the court said: "Where the suitor is not at fault, the determinative consideration moving the court is whether or not the action at the death of the party was ready for the rendition of final judgment." In *Boyd* v. *Lancaster*, 32 Cal.App.2d 574 [90 P.2d 317], it is said: "It is the important function of a *nunc pro tunc* order to supply deficiencies in the record of orders or judgments already actually made or rendered so as to make the record conform to the truth. If the cause has been tried and finally submitted to the court for its judgment, the rights of the parties are to be determined as they existed at the time of such submission." The circumstances involved in *Mather* v. *Mather*, 22 Cal.2d 713 [140 P.2d 808], and in *Corbett* v. *Corbett*, 113 Cal.App. 595 [298 P. 819], relied on by appellant, were entirely different and nothing said in those cases is inconsistent with the rules above referred to.

This action had been fully tried with ample opportunity for argument given to both sides, and had been sufficiently submitted when the court's decision was fully indicated on December 4, 1953. The original plaintiff had submitted proposed findings four days before he died. While it would seem that this could well have been done at an earlier date, the court found, in its *nunc pro tunc* order, that there had been no unreasonable delay in presenting proposed findings after the rendering of the decision on December 4, 1953. There is nothing in the record to indicate that the conclusion to this effect was not supported by the facts as then presented to the court. This action had been fully tried, the court had announced its decision, and findings had actually been prepared and submitted before the death of the original plaintiff.

The delay in entering judgment was not due to any fault of the plaintiff, within the meaning of the established rules. When the proposed findings were submitted the plaintiff had done all that he could do, and at the time of his death the action was ready for the rendition of final judgment. The delay in signing the findings and entering judgment is the controlling factor in determining whether the *nunc pro tunc* principle should be applied. This delay was that of the court, and was not due to any fault of the plaintiff. We find nothing in the record which would justify a reversal on the ground that the court had no right or power to enter the *nunc pro tunc* findings and judgment.

The appellant further contends that the evidence was not sufficient to sustain the judgment. It is admitted that "the case is replete with conflicting testimony concerning the facts surrounding the alleged injuries," but it is argued that "respondent's only evidence of damage is through his own mouth or that of his family, and by his doctor based entirely on the story told him by respondent without objective findings to sustain his opinion." It would serve no useful purpose to review the evidence here. While it was conflicting in many respects, it is amply sufficient to support the judgment. On a previous motion to dismiss the appeal a ruling was reserved with the matter to be considered with the merits of the case. The motion to dismiss is denied. The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1956.