Filed 5/23/22  Johnson v. Adir Restaurants Corp. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEXANDER JOHNSON, | B309661 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC449606 |
| v. | |
| ADIR RESTAURANTS CORP., | |
| Defendant and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Morse Mehrban for Plaintiff and Appellant.

Schwartz Law Center and Matthew H. Schwartz for Defendant and Respondent.

—————————————

Alexander Johnson appeals from the trial court's November 16, 2020 order that: vacated a judgment entered on July 2, 2020 awarding Johnson $1,000 in statutory damages and $12,476.66 in attorney fees against Adir Restaurants Corp. (Adir) and retroactively assessing postjudgment interest, costs, and attorney fees from 2012—when the court first ordered Johnson was entitled to those damages and fees; denied Johnson's memorandum of costs claiming postjudgment attorney fees; and ordered a new judgment to be entered in the amount of $13,476.66 alone, with no interest to accrue on that amount before the date of the new judgment's entry. Finding Johnson has failed to demonstrate error, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, Johnson, who is hearing impaired, sued Adir for statutory damages and injunctive relief under the Unruh Civil Rights Act (Civil Code section 51 et seq.). Johnson alleged Adir refused to allow his service animal to accompany him into Adir's restaurant in violation of the Americans with Disabilities Act of 1990. On February 29, 2012, the parties stipulated to the facts alleged in the complaint and that Johnson was entitled to statutory damages—as there were no actual damages. The parties disputed the applicable measure of statutory damages, however, and asked the trial court for a hearing on that issue. The court continued the trial date to March 28, 2012, and set a hearing for that date to determine the proper amount of statutory damages to award Johnson: $4,000 under the Unruh Civil Rights Act or $1,000 under the Disabled Persons Act (Civil Code section 54 et seq.). (Civ. Code, § 52, subd. (a); § 54.3, subd. (a).)

On April 10, 2012, the court (Hon. Holly E. Kendig) filed a signed, written ruling concluding the Disabled Persons Act controlled. The court ordered: "Plaintiff shall recover $1,000

2

in statutory minimum damages under Civil Code section 54.3." The court directed the clerk to give notice of its ruling on statutory damages to the parties, which it did.

Two months later, Johnson moved for attorney fees on the ground judgment had been entered in his favor against Adir and both the Unruh Civil Rights Act and the Disabled Persons Act entitle a prevailing plaintiff to attorney fees. Adir opposed the motion on various grounds.

The matter was reassigned to another department in August 2012. On December 10, 2012, the court (Hon. Yvette M. Palazuelos) filed its written ruling and order granting Johnson's earlier-submitted motion for attorney fees—as the prevailing party under the Disabled Persons Act—and ordered Adir to pay Johnson $12,476.66 in attorney fees. The clerk gave notice to Johnson who in turn filed and served Adir with a notice of entry of judgment or order. On January 3, 2013, the court advanced and vacated all future hearing dates in the matter based on the April 10, 2012 ruling on statutory damages.

On June 5, 2020, Johnson's counsel attempted to file a renewal of judgment. The clerk rejected it, noting, "The 4-10-12 order awarding statutory damages is not a judgment. The 12-7-12 entry for atty fees is not inserted into a judgment. Cannot be renewed." (Internal capitalization and punctuation omitted.)

In response, Johnson's counsel apparently submitted a proposed judgment to the court on June 9, 2020. The attached declaration of mailing, which requires the declarant to sign under penalty of perjury, states Johnson's attorney served the proposed judgment by mailing it directly to Adir. Johnson's attorney did not sign the declaration of mailing. On July 2, 2020, the court (Hon. Rupert A. Byrdsong) signed and filed the proposed judgment prepared by Johnson's counsel. It provides:

3

"On April 10, 2012, the Court ruled that . . . Johnson . . . is entitled to recover $1,000.00 in damages from Adir . . . . On December 7, 2012, the Court ruled that [Johnson] is entitled to recover $12,476.66 in attorney fees from [Adir]. Judgment reflecting said awards not having been entered, the Court now enters judgment for . . . Johnson and against . . . Adir . . . . [Adir] must pay [Johnson] on the complaint $13,476.66. Post-judgment interest, costs, and attorney fees are assessed from April 10, 2012 for the damage award and December 7, 2012 for the attorney fee award."

That same day the clerk filed a notice of entry of judgment reflecting judgment had been entered in the matter on July 2, 2020. The clerk mailed the notice to counsel.

Johnson's counsel then filed, on July 8, 2020, an application for and renewal of judgment totaling $24,765.18. That total included the $13,476.66 judgment, $950 in postjudgment costs— consisting of attorney fees incurred between September 1, 2018, and July 8, 2020; and $10,293.52 in postjudgment interest. Counsel simultaneously filed a memorandum of costs after judgment, claiming the $950 in attorney fees and declaring the $10,293.52 in interest remained due. According to the proof of service, Johnson's counsel mailed the memorandum of costs and declaration of accrued interest directly to Adir that same day.

On July 31, 2020, Adir, through its counsel, filed a motion to vacate the judgment entered on July 2, 2020, under Code of Civil Procedure[1] section 663 and/or section 473, and to tax costs.

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

4

Adir argued Johnson failed to give it notice of the proposed judgment depriving Adir of the opportunity to object to it; the judgment erroneously assessed almost eight years' worth of purported postjudgment interest for a period that had elapsed before judgment was entered; and the judgment erroneously authorized Johnson to recover postjudgment attorney fees.

In response, Johnson argued Adir was not entitled to relief under either statute for procedural reasons. Substantively, Johnson contended the statutory damages award was a final judgment that the court clerk had failed to enter. Thus, the trial court had inherent power to enter the "[f]ormal" judgment to relate back to the April 10, 2012 ruling, entitling Johnson to postjudgment interest from the dates the court made its original damages and fee awards. Johnson also argued he was entitled to recover postjudgment attorney fees incurred after the court rendered its initial judgment in April 2012.

The court heard argument from counsel on November 16, 2020. The reporter's transcript of the hearing is not part of the appellate record. That same day, the court filed its written order granting Adir's motion. The court vacated the July 2, 2020 judgment and ordered a new judgment to be entered in the amount of $13,476.66 with no interest to be deemed to have accrued on that amount before the entry date of the new judgment. The court also denied Johnson's memorandum of costs with prejudice. Johnson appealed.

## DISCUSSION

Johnson challenges the entirety of the trial court's November 16, 2020 order granting Adir's motion to vacate judgment and to tax costs. As we noted, the appellate record does not include a reporter's transcript of the hearing on Adir's motion. We reiterate the well-known appellate principle that a judgment or order challenged on appeal is presumed correct,

5

and the appellant bears the burden to demonstrate error affirmatively.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  In the absence of a reporter's transcript " '[w]e must therefore presume that what occurred at that hearing supports the judgment.' "  (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 9 (*Obrecht*); see also *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [presuming order denying motion for relief under § 473 "based on any rationale supported by the record" in the absence of a reporter's transcript].)

1.    ***The court did not err when it vacated the July 2, 2020 judgment***

Adir moved to vacate the July 2, 2020 judgment under section 663 and/or section 473.[2]  Johnson contends the trial court had no jurisdiction to grant Adir's motion under section 663 because it did not file and serve a notice of intent to vacate the judgment within the statutorily-required 15 days from the service of notice of entry of judgment (§ 663a, subd. (a)), and the trial court did not rule on the motion within 75 days from the mailing of the notice of entry of judgment (§ 683a, subd. (b)).  Johnson also contends Adir could not use section 473

---

[2]    Under section 663, upon a party's motion, a court may set aside and vacate a judgment if an incorrect or erroneous basis for the decision exists.  Under section 473, subdivision (a)(1), a trial court has discretion to "allow a party to amend any pleading or proceeding . . . by correcting . . . a mistake[;] . . . [and] allow . . . an amendment to any pleading or proceeding in other particulars."  A court may "relieve a party . . . from a judgment . . . taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect," under section 473, subdivision (b).  And, a court may set aside a void judgment under section 473, subdivision (d).

6

to extend those jurisdictional deadlines, citing *Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1394 (holding § 473 does not apply to extend the time limits under § 663a for filing a motion to vacate judgment under § 663).

True, Adir did not file its motion to vacate judgment within 15 days of the July 2, 2020 notice of entry of judgment, and the trial court did not rule on the motion until November 2020. Nevertheless, as it did in the trial court, Adir argues the court had inherent authority to grant it equitable relief from the judgment—regardless of any statutory deadline— upon its showing that the judgment was obtained through extrinsic fraud.[3] In the absence of a reporter's transcript, we presume the trial court granted Adir's motion on this ground.[4] "A ruling on a motion to vacate a judgment rests in the sound discretion of the trial court. [Citation.] We will not reverse the exercise of such discretion except when there is clear abuse." (*State of Arizona ex rel. Arizona Dept. of Revenue v. Yuen* (2009) 179 Cal.App.4th 169, 178.)

"A motion to vacate a judgment for extrinsic fraud is not governed by any statutory time limit, but rather is addressed

---

[3] Adir made this argument in its reply brief supporting its motion to vacate. Johnson does not appear to argue the court erred in granting Adir's motion on this ground, other than to assert he properly served Adir. He thus has forfeited any claimed error on this point. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]."].)

[4] The court, in its minute order, stated it considered all the documents filed and argument of counsel. It granted the motion on the grounds set forth in the moving papers, which we presume included Adir's reply brief.

7

to the court's ' " 'inherent equity power' " ' to grant relief from a judgment procured by extrinsic fraud." (*Department of Industrial Relations v. Davis Moreno Construction, Inc.* (2011) 193 Cal.App.4th 560, 570.) " 'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding.' " (*Ibid.*) A party's failure to give notice to the other party is an example of extrinsic fraud. (*Ibid.*) In essence, extrinsic fraud exists where one party prevents the other party " 'from having his day in court.' " (*Ibid.*)

We presume the trial court found credible Adir's attorney's declaration that neither he nor his client was served with the proposed judgment, and found Johnson's attorney's unsigned declaration of mailing inadequate to prove he served Adir with the proposed judgment. That evidence was sufficient for the trial court to find the July 2, 2020 judgment was obtained through extrinsic fraud: by failing to serve Adir and/or its counsel with the proposed judgment,[5] Johnson deprived Adir of the opportunity to object to the proposed judgment before the court entered it as the judgment on July 2, 2020.

---

[5] Johnson contends he was not required to serve the proposed judgment on Adir's counsel because it related to the enforcement of his judgment. (See § 684.020, subd. (a) [service of documents required under enforcement of judgment laws to be served on judgment debtor instead of counsel].) Adir contends there was no judgment to enforce at that time; thus, Johnson was required to serve Adir's counsel. (See, e.g., Cal. Rules of Court, rule 1.21 [when a document is required to be served on a party, service must be made on represented party's attorney].) We need not resolve this issue as the trial court reasonably could have found Johnson served neither Adir nor its counsel with the proposed judgment.

8

Accordingly, we conclude the court had authority to vacate the July 2, 2020 judgment and did not abuse its discretion in doing so. In any event, Johnson "had an affirmative obligation to provide an adequate record so that we could assess whether the court abused its discretion." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.) Because the appellate record does not include a reporter's transcript of the hearing on Adir's motion to vacate, Johnson has forfeited his argument that the trial court abused its discretion in granting the motion. (*Ibid.* ["The absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion."].)

Having concluded the trial court did not err in vacating the July 2, 2020 judgment, we consider whether Johnson was entitled to the accrual of postjudgment interest from April 2012 and to his claimed postjudgment attorney fees.

2. ***The court did not err when it did not make the accrual of interest retroactive to 2012***

Johnson contends that, because the April 2012 order awarding him statutory damages was in effect a final judgment, he was entitled to recover postjudgment interest from that date.[6] The date from which interest should run on a judgment is a question of law that we review de novo. (*Chodos v. Borman* (2015) 239 Cal.App.4th 707, 712.)

We agree the April 10, 2012 order can be described as a "final determination of the rights of the parties" in this action.

---

[6] Johnson also contends he was entitled to interest on his attorney fee award because that award is deemed incorporated into the judgment. Our conclusion that Johnson was not entitled as a matter of law to retroactive postjudgment interest applies to both his damages and attorney fees awards.

9

(§ 577.)  The order adjudicated the only issue left for the court to decide on Johnson's complaint—the amount of statutory damages Adir owed.  Although the issue of attorney fees remained, an award of costs and attorney fees to a prevailing party does not affect the legal basis of the earlier-rendered judgment.  (See, e.g., See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222–223 (*Torres*) [disputed legal basis for attorney fee award had nothing to do with propriety of underlying judgment].)  Indeed, " '[w]hen a party wishes to challenge both a final judgment and a postjudgment costs/ attorney fee order, the normal procedure is to file two separate appeals:  one from the final judgment, and a second from the postjudgment order.' "  (*Id.* at p. 222, italics omitted.)

But, postjudgment interest does not accrue upon the *rendition* of a judgment.  The statute is clear.  "[I]nterest commences to accrue on a money judgment on the date of *entry* of the judgment."  (§ 685.020, subd. (a), italics added.)  As the Court of Appeal explained long ago, "[t]he code recognizes that the 'rendition' of a judgment and its 'entry' are different stages which operate as initial points from which other acts may be begun or other rights acquired. [Citation.]  Thus the right to issue execution attaches from the time of the entry of the judgment [citation]; but an appeal is effective if taken at any time after the rendition of the judgment but not later than sixty days after its entry."  (*Brown v. Superior Court* (1925) 70 Cal.App. 732, 734–735.)  Accordingly, although the court may effectively have *rendered* its judgment on Johnson's complaint through its April 2012 order, no interest could begin to accrue on the monetary award in that order until judgment was in fact *entered*.

Here, the judgment was not entered until July 2, 2020, but provided for interest to be assessed from the dates of the original orders in 2012.  As Johnson asserts—and Adir does not dispute—

10

a court has inherent authority to enter judgment nunc pro tunc—to relate it "back to the time when it should have been entered." (*Norton v. City of Pomona* (1935) 5 Cal.2d 54, 62 (*Norton*).) A court should grant or refuse to enter a nunc pro tunc judgment "as justice may require in view of the circumstances of a particular case." (*Ibid.*) The court apparently exercised that authority when it entered the July 2, 2020 judgment prepared by Johnson but—after hearing Adir's motion to vacate—determined entry of judgment nunc pro tunc was not appropriate under the circumstances. We find no abuse of discretion.

The case law is clear that a court may enter judgment retroactively to the date when it should have been entered, "*provid[ed]* the delay is not occasioned by the party applying" for entry nunc pro tunc. (*Norton, supra*, 5 Cal.2d at p. 62, italics added; see also 7 Witkin, Cal. Procedure (6th ed. 2021) Judgment § 63 ["Where a judgment or order is rendered, but, through negligence or inadvertence of the clerk, is not entered at the proper time, the court *may* order its entry nunc pro tunc." (Italics added.)].) In other words, the court's retroactive entry of a judgment " 'is an exercise of inherent power of the court, the object being to do justice to a litigant whose rights are threatened by a delay *that is not the litigant's fault.* [Citations.]' " (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851, italics added.)

In his opposition to Adir's motion, Johnson argued that, because the court clerk failed to enter judgment immediately following the court's April 2012 damage award, as required under section 664, the court appropriately entered judgment to relate it back to the original award for purposes of the accrual of postjudgment interest, costs, and attorney fees. As Adir noted, section 664's requirement that the clerk immediately enter

11

judgment "in conformity to" the verdict or court's decision, applies when there has been a jury or court trial. (§ 664.)

Here, the parties presented no evidence, and the trial court decided no factual issues, as usually would occur during a court trial. (§§ 631.7, 607 [order of proceedings]; § 632 [after trial of question of fact by court, if requested, court shall issue statement of decision explaining factual and legal basis for its decision].) Rather, the court decided the proper statutory damages to award Johnson as a matter of law, based on the parties' briefs and counsel's argument. The court's March 28, 2012 minute order bears the heading, "Jury Trial – Statutory Damages Only," but then states the matter was "called for hearing." On April 10, 2012, the court entered its written ruling finding the Disabled Persons Act controlled the amount of statutory damages available to Johnson and ordered, "Plaintiff shall recover $1,000 in statutory minimum damages under Civil Code section 54.3." The court's minute order, bearing the heading, "Trial – Re: Statutory Damages Only," reflects the court directed the clerk to give notice of the ruling to all parties.

Because there is no transcript of that hearing or the hearing on Adir's motion to vacate, we can presume the trial court agreed with Adir that its April 10, 2012 ruling was not a decision after a court trial, making section 664—and its direction that the clerk enter judgment—inapplicable. Rather, as Adir argued, the court's ruling finding the Disabled Persons Act controlled the amount of statutory damages available was more akin to an order granting summary adjudication or judgment on a purely legal question. Yet, even if section 664 applied, and the clerk should have entered judgment around April 2012, we cannot conclude the court was required to order interest on the judgment to accrue retroactively from that date as a matter of law.

12

We must infer the trial court agreed with Adir (*Obrecht, supra*, 245 Cal.App.4th at pp. 8–9) and found the eight-year delay in entering judgment in this matter was owing at least partially, if not totally, to Johnson's laches or negligence, making its retroactive entry inappropriate under the circumstances. (See, e.g., *Young v. Gardner-Denver Co.* (1966) 244 Cal.App.2d 915, 918–920 [finding court did not abuse its discretion in refusing to correct clerical error nunc pro tunc where plaintiff's attorney was aware of error but failed to seek a timely correction or indicate intent to apply for entry of judgment nunc pro tunc, and retroactive entry would void court's order granting defendant new trial].)

Until the judgment was entered, it could not be enforced. (§ 664 ["In no case is a judgment effectual for any purpose until entered."]; § 683.010 ["Except as otherwise provided by statute or in the judgment, a judgment is enforceable under [the Enforcement of Judgments Law] upon entry."].) Allowing interest to accrue retroactively from 2012 when Johnson did not so much as inquire into the status of the judgment, much less submit a proposed judgment or ask the court to direct the clerk to enter judgment, would result in a windfall to Johnson and prejudice Adir. Had Johnson acted diligently, however, judgment would have been entered long ago. Once entered, the judgment would have been enforceable, and the court reasonably could infer Adir would have satisfied it at that time. (See, e.g., *Phillips v. Patterson* (1939) 34 Cal.App.2d 481, 484 [a "party in whose favor a judgment *has been rendered*, is entitled to an execution immediately upon the *entry* of the judgment" (italics added)].) Instead, Johnson allowed the matter to languish for eight years and then sought to tack over $10,000 in retroactive, accrued interest onto a $13,476.66 judgment.

Under these circumstances, we cannot say justice compelled the trial court to order the retroactive accrual of postjudgment interest on the money judgment from 2012.[7] (See *Wells v. Coca Cola Bottling Company of Fresno* (1956) 140 Cal.App.2d 218, 222 [" 'a *nunc pro tunc* order should be granted or refused as justice may require, in view of the circumstances of the particular case' "]; *Hess v. Gross* (1943) 56 Cal.App.2d 529, 532 [" 'where an order has actually been made and its entry omitted, . . . it may be subsequently entered, and if justice requires, may be made to take effect *nunc pro tunc*, as of the date when it was actually made' "]; see also *Williamson v. Plant Insulation Co.* (1994) 23 Cal.App.4th 1406, 1415 [where delay in rendering or entering judgment " ' "arises from the act of the court—that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, through the intricacy of the questions involved, or of any other cause *not attributable to the laches of the parties*—the judgment or the decree may be entered retrospectively as of a time when it should or might have been entered" ' " (italics added)].)

3. ***The court did not err in denying Johnson attorney fees claimed as postjudgment costs***

We independently determine the legal basis for an award of attorney fees (*Torres, supra*, 154 Cal.App.4th at p. 224), but review a trial court's determination of the reasonableness of attorney fees for abuse of discretion (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096). A party moving for statutory attorney fees bears the burden of proof. (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 926.)

---

[7] For the same reasons, the court's disallowance of retroactive postjudgment costs from 2012 was not in error.

14

Section 685.040 permits a judgment creditor to recover "the reasonable and necessary costs of enforcing a judgment." Attorney fees are not included as postjudgment costs, "unless otherwise provided by law."[8] (*Ibid.*) Where a statute authorizes attorney fees—as is the case here—they have been " 'otherwise provided by law' " under section 685.040 and "may be recovered as costs if expended to enforce a judgment." (*Rosen v. LegacyQuest* (2014) 225 Cal.App.4th 375, 382; *Highland Springs Conference & Training Center v. City of Banning* (2019) 42 Cal.App.5th 416, 424 (*Highland*); see also Civ. Code, § 54.3, subd. (a) [providing plaintiffs who prevail on claim for violating Disabled Persons Act are entitled to attorney fees].)[9] A judgment creditor may claim postjudgment enforcement costs, including attorney fees, either by a memorandum of costs under section 685.070, or by a noticed motion under section 685.080. (*Highland*, at p. 424.)

Johnson sought a total of $950 in attorney fees incurred from September 1, 2018 through July 8, 2020 by a memorandum of postjudgment costs under section 685.070. In opposition to Adir's motion, Johnson's attorney generally declared he spent

---

[8]     Postjudgment enforcement attorney fees also are recoverable where the judgment includes an award of attorney fees under a contract. (§ 685.040; § 1033.5, subd. (a)(10)(A).)

[9]     In its motion, Adir erroneously argued section 685.040 allowed for the recovery of postjudgment attorney fees only if the judgment included an award of attorney fees authorized by contract. We presume the court followed the law and did not grant Adir's motion on this basis. (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 153 [reviewing court presumes trial court " 'properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise' "].)

more than three hours "on post-judgment enforcement activities" during this 22-month time frame, including:

> "communications with the Court; legal research; research into Defendant's assets and income for collection purposes; preparation of legal documents related to renewal of the Damage Award and Fee Award, the Post-Judgment Cost Memo, the Formal Judgment, and Plaintiff's notice of change of address."

To the extent Johnson's cost memorandum sought fees incurred in obtaining entry of Johnson's proposed judgment, it essentially sought fees expended to obtain the judgment, not to enforce it. (See, e.g., *Highland, supra*, 42 Cal.App.5th at pp. 425–426 [attorney fees incurred to amend judgment to add an additional judgment debtor as the alter ego of the original judgment debtor were recoverable as prejudgment fees incurred to obtain judgment, not postjudgment enforcement fees under § 685.040].) Those fees, therefore, were not recoverable under sections 685.040 and 685.070.[10]

Moreover, as we have discussed, because a judgment is not enforceable until entered, Johnson could not have incurred costs or attorney fees *to enforce* the judgment in this matter until July 2, 2020—the first date an enforceable judgment existed. (§ 683.010.) Johnson contends that, because section 680.230 defines "judgment" as "a judgment, order, or decree entered

---

[10]     As Adir asserts, to recover attorney fees incurred pre-judgment, Johnson had to file a noticed motion under California Rules of Court, rule 3.1702(b). (See *Highland, supra*, 42 Cal.App.5th at pp. 422–423 [plaintiffs' fee requests incurred in amending judgment to add alter-ego as judgment debtor were governed by rule 3.1702(b)].)

16

in a court of this state," the 2012 damages order constitutes an enforceable money judgment under the Enforcement of Judgments Law (EJL). He argues he thus was entitled to attorney fees incurred in enforcing the damages award.

But, "litigants do not have license to substitute the word 'order' everywhere the word 'judgment' appears in the EJL, regardless of the circumstances or statutory intent. The ostensible purpose of the broad definition of 'judgment' in section 680.230 is to permit an order awarding fees to be enforced under the EJL where there is no judgment." (*Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 143–144.) As Johnson notes, and the court in *Lucky* gave by way of example, prejudgment orders for monetary sanctions are immediately enforceable under the EJL. (*Ibid.*) That makes sense. Because prejudgment monetary sanctions redress parties' or their attorneys' litigation conduct *during* the litigation, their payment is unrelated to the outcome of the case and usually intended to be paid at or near the time they are ordered. A party, therefore, need not wait for a judgment to be entered on the underlying action to enforce payment of ordered sanctions. (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 615 [explaining terminating sanctions unnecessary to enforce payment of monetary sanctions as they "have the force and effect of a money judgment, and are immediately enforceable through execution"].)

Here, in contrast, the court's order awarding statutory damages on the complaint was capable of being entered as a judgment had Johnson submitted a proposed judgment or asked the court to direct the clerk to enter judgment. Nor did the ruling order the damages immediately payable. If the court's ruling on statutory damages were immediately enforceable under the EJL, as Johnson essentially contends, then under that same logic

17

no court would need to enter a judgment after issuing a written ruling following a court trial. That clearly is not the case. (See, e.g., *Phillips v. Phillips* (1953) 41 Cal.2d 869, 873–874 [trial court's signed memorandum, containing findings of fact and conclusions of law, filed with the clerk and entered in the minutes, met "requirements for *rendition* of a judgment," but was not "the judgment" (italics added)]; *In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 666, 672 ["Ruling After Court Trial" that was filed, but not entered into the judgment book, "was not a judgment" and "not effectual for any purpose, and at any time" before entered].)

Moreover, we can infer the trial court found Johnson failed to meet his burden to show the attorney fees he incurred were necessary to enforce the judgment and/or reasonable. Johnson's counsel's declaration does not state when exactly during the 22-month period he performed the various tasks he describes as enforcement activities, or how much time he spent on each activity. The trial court, therefore, was left to guess at how much time counsel spent on true enforcement activities (and what those activities were exactly) from July 2, 2020, to July 8, 2020, when determining whether the fees incurred were necessary and reasonable.[11]

Johnson, therefore, has not demonstrated the court erred in denying the entirety of his memorandum of costs.

---

[11] For the same reasons, even if the attorney fees Johnson incurred before July 2, 2020 could be construed as enforcement costs, the trial court reasonably could have found Johnson failed to meet his burden of proof. We can infer the trial court found Johnson's claimed fees unreasonable and/or unnecessary—and therefore unrecoverable—given the futility in seeking to renew a judgment that had not been entered, as well as unnecessarily incurred due to Johnson's delay.

18

## DISPOSITION

The November 16, 2020 order is affirmed.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P.J.

LAVIN, J.